UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CV-61751-MARRA/JOHNSON

DANIEL J. STERMER, as Receiver for
Laura Hess & Associates, P.A., Hess
Kennedy, Consumer Law Center, Legal
Debt Center, Campos Chartered Law
Firm, et al.,

                      Plaintiff,

v.

SCK SOLUTIONS, LLC,

                      Defendant.

_____/

**DEFENDANT SCK SOLUTIONS, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant SCK Solutions, LLC ("SCK"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its motion to dismiss the Amended Complaint of Plaintiff Daniel J. Stermer ("Plaintiff"), as receiver on behalf of Hess Kennedy and its various affiliates, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state claims upon which relief may be granted.

## PRELIMINARY STATEMENT

Plaintiff seeks to recover funds legitimately earned through a contract between SCK and a third party. Plaintiff brought this action notwithstanding that: (a) the entities it controls were not parties to the agreement at issue; (b) there is no dispute that SCK fully performed all its obligations under the agreement; and (c) the payments Plaintiff now seeks to recoup from SCK were all made by a third party, except for a few isolated payments occurring after Plaintiff assumed control.

It is undisputed that SCK had no dealings whatsoever with any of the entities now controlled by Plaintiff. Plaintiff's theory of recovery is instead grounded in a misplaced extension of Florida law that is directly contradicted by applicable case law and the clear wording of the agreement at issue. Indeed, the agreement at issue clearly states: "It is specifically understood by the parties that under no circumstances shall the compensation paid to SCK be based on a percentage or any portion of any legal fees collected by [the Receivership Entity], either directly or indirectly."

In response to SCK's motion to dismiss the original complaint, Plaintiff added boilerplate allegations asserting a violation of the Florida Deceptive and Unfair Trade Practices Act. This transparent attempt to resurrect its lawsuit also falls on its face. Plaintiff lacks

standing to bring these claims, fails to meet the basic pleading standards, and does not allege facts showing that the receivership entities have been injured or aggrieved in any way.

As set forth below, each claim should be dismissed.

## FACTUAL BACKGROUND[1]

Plaintiff brings this action as receiver of a group of law firms and businesses registered to do business in Florida, including Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, The Consumer Law Center, LLC, Consumer Recovery Team, Legal Debt Center, LLC, Global Payment Processing, LLC, and Campos Chartered Law Firm ("Campos") (the entities and their various affiliates are referred to individually as a "Receivership Entity" or collectively as the "Receivership Entities"). (Am. Compl. ¶ 2).

SCK provides marketing and advertising services to companies offering debt management and debt settlement services to the public. (*Id.* at ¶ 13). In June 2007, SCK and a non-party named Seton Corp. ("Seton") entered into an Educational and Support Services Agreement (the "Support Agreement") in which SCK agreed to provide certain marketing and advertising services to Seton. (Support Agreement at p. 1; *see* Am. Compl. ¶ 30).[2] Earlier, the Receivership Entities had engaged Seton to administer their debt management and debt settlement business. (Am. Compl. ¶ 32). Unlike arrangements with other marketers and advertisers, who apparently contracted directly with the Receivership Entities, none of the Receivership Entities were parties to the Support Agreement with SCK. (Support Agreement at

---

[1]     The facts presented below are based on the Amended Complaint ("Am. Compl.") and are presumed to be true only for the purposes of this motion.

[2]     A copy of the Support Agreement is attached to the Amended Complaint and is therefore considered part of the pleadings for all purposes, including a motion to dismiss. Fed. R. Civ. P. 10(c).

p. 1; *see* Am Compl. ¶ 31).  One of the Receivership Entities, Campos, was identified as a third party beneficiary of the contract.  (Support Agreement at Art. VI, Sec. 1.7; Am. Compl. ¶ 32).

SCK's main duties under the Support Agreement with Seton were twofold: first, SCK was to advertise services to the public through a marketing program; second, SCK was to answer calls from interested consumers and determine if they were suitable candidates for debt settlement services – if so, SCK would forward their information to Seton for processing. (Support Agreement at Art. V, Secs. 1-4; *see* Am. Compl. ¶¶ 13-15).  The Support Agreement does not provide, nor does the Amended Complaint allege, that SCK transmitted any information to Campos.  Indeed, Plaintiff does not allege that SCK communicated with any Receivership Entity or its principals in any way, either before SCK and Seton executed the Support Agreement or during its performance.

In exchange for SCK's services, Seton agreed to pay SCK fees equal to approximately sixty percent of the "Discount Rate Payments" (this term is not defined in the Support Agreement) that Seton received from consumers, plus a monthly administrative fee for each account.  (Support Agreement at Art. VI, Sec. 1.1).  As set forth in Article VI, Section 1.2 of the Support Agreement, SCK's compensation was based on: "(a) the time and expenses incurred by SCK in its services, (b) the total number of potential clients interviewed by SCK or a third party, (c) the total number of documents completed by SCK or a third party, and (d) a bonus based on productivity, or any combination of the above factors."  (*Id*. at Art. VI, Sec. 1.2). In the same section, the parties made clear that the payments from Seton to SCK were in no way tied to legal fees: "It is specifically understood by the parties that under no circumstances shall the compensation paid to SCK be based on a percentage or any portion of any legal fees collected by [Campos], either directly or indirectly."  (*Id*.).

Pursuant to the Support Agreement, SCK provided marketing and advertising services to Seton for over one year, during which period SCK received payments totaling roughly $4.5 million.  (Am. Compl. ¶ 37).  This amount includes significant disbursements by SCK for placement of advertising.  The Amended Complaint never questions that SCK performed all the services for which it was paid.  In fact, SCK is still owed a considerable amount of money for its services.  Plaintiff also does not dispute that the payments to SCK, which occurred weekly (and sometimes daily), were all made by Seton and/or its alter ego, AmeriCorp, Inc. ("AmeriCorp"), not the Receivership Entities.  (*See id*. at ¶¶ 23, 31, 34).[3]

In February 2008, the Florida Attorney General commenced a lawsuit against the Receivership Entities asserting violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  The lawsuit resulted, in part, in the appointment of Plaintiff as receiver of the Receivership Entities, with Plaintiff assuming control of their operations in July 2008.  Soon thereafter, AmeriCorp advised SCK it would stop paying for marketing and advertising services under the Support Agreement, citing an instruction from Plaintiff to discontinue all payments to advertisers.  (*See id*. at ¶ 27).  AmeriCorp also informed SCK it would not pay SCK overdue amounts for services already rendered.  (*See id*.).

On September 26, 2008, the Receiver filed the instant action against SCK seeking to recoup the $4.5 million paid to SCK in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.  Thereafter, on October 30, 2008, SCK removed this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1441 *et seq*. on the basis of diversity jurisdiction.

---

[3]    On information and belief, several payments were made directly by Campos after Plaintiff was appointed receiver.

SCK moved to dismiss Plaintiff's complaint on November 14, 2008. Several weeks later, on December 4, 2008, Plaintiff filed an Amended Complaint, rendering SCK's motion moot. The Amended Complaint adds new allegations against SCK, including boilerplate claims under FDUTPA. Plaintiff provides no facts particular to SCK aside from generalized allegations that SCK engaged in unfair and deceptive acts. All the allegations focus on what SCK has allegedly done to consumers. (*See* Am. Compl. ¶ 33).[4] Plaintiff does not allege that SCK ever deceived, misled, or committed any unfair acts against the Receivership Entities.

## ARGUMENT

### I.
### STANDARD ON A MOTION TO DISMISS
### FOR FAILURE TO STATE CLAIMS

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if it does not possess enough facts to show that the complainant is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007). In *Twombly*, the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65 (citations omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citations omitted). Thus, "pursuant to Twombly . . . to survive a motion to dismiss, a plaintiff's complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Pratte v. Wuebbels, M.D.*, No. 6:07-cv-775-Orl-19DAB, 2008 WL 423409, at *5 (M.D. Fla. Feb. 13, 2008) (citing *Twombly*, 127 S. Ct. at 1974).

---

[4]     SCK strenuously denies these allegations.

As set forth below, Plaintiff fails to state a claim on Counts I, II, and III of the Amended Complaint.  To begin with, Plaintiff has no standing to seek a declaration that the Support Agreement is illegal and void.  Further, Plaintiff's assertion that the contract is illegal is at odds with both Florida law and the plain terms of the Support Agreement.  Nor can Plaintiff fairly allege deceptive and unfair trade practices (Count II) where Plaintiff has not identified any specific acts by SCK which violate FDUTPA, and where the Receivership Entities have not actually been aggrieved or damaged by SCK's supposed conduct.  Finally, Count III of the Amended Complaint should be dismissed for the independent reasons that the payments Plaintiff now seeks to recoup were made (a) by a third party, as opposed to the Receivership Entities, and (b) in exchange for valuable services performed by SCK, which refute Plaintiff's claim of unjust enrichment.

## II.
## PLAINTIFF ALLEGES NO BASIS UPON WHICH TO DECLARE THE SUPPORT AGREEMENT ILLEGAL AND THEREFORE VOID

In Count I of the Amended Complaint, Plaintiff seeks a declaration "that the provisions of the [Support Agreement] concerning payment of fees to [SCK] in exchange for marketing services are illegal pursuant to Fla. Stat. Ann. §§ 877.02 and 501.204(1) [FDUTPA]," and that the Support Agreement is thus void.  Plaintiff's claim for declaratory judgment is defective for several reasons.  First, there is no actual controversy between Plaintiff and SCK, meaning that Plaintiff cannot satisfy the essential requirement for relief under the Declaratory Judgment Act.  Even assuming a genuine controversy exists, it is clear that the Support Agreement fully complies with both Section 877.02 and FDUTPA.  Indeed, nothing in the statutes, nor the case law construing the statutes, suggest the Support Agreement is in any way illegal.  Finally, the plain language of Support Agreement is squarely at odds with Plaintiff's

allegations.  This discrepancy renders Count I – as well as the remaining Counts, which are premised on similar allegations – without merit.

## A.       Plaintiff Does Not Satisfy the Standard for a Declaratory Judgment

The Declaratory Judgment Act permits federal courts to declare the rights of parties only in cases involving an "actual controversy."  28 U.S.C. § 2201; *see Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981).  As the Supreme Court has explained, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937); *see Provident Life & Accident Ins. Co. v. TransAmerica-Occidental Life Ins. Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988).  In addition, the party invoking the federal authority "must show, at an irreducible minimum, that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition."  *Atlanta Gas Light Co. v. Aetna Cas. and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995)  (quotations and citations omitted).  Here, there are two major flaws in Plaintiff's declaratory judgment claim.

First, there is no contract between the Receivership Entities and SCK.  Plaintiff asserts that "[a] present justiciable controversy exists between [Plaintiff] and [SCK] with respect to the rights, status, and relations under *the contract between them*." (Am. Compl. ¶ 39) (emphasis added).  Yet this is directly contradicted by the contract Plaintiff annexed to its pleading.  It instead confirms that Seton and SCK are the only parties to the Support Agreement.[5]  This fact disqualifies Plaintiff's claim as an "actual controversy" within the

---

[5]       To be sure, Campos is listed as a third party beneficiary of the Support Agreement.  (*See* Support Agreement at Art. VI, § 1.7).  Designation as a third party beneficiary ordinarily

meaning of the Declaratory Judgment Act.  *See Provident Life & Accident Ins. Co.*, 850 F.2d at 1493 (finding no actual controversy where there was no contract between opposing insurance companies contesting responsibility to pay non-party insured's expenses).

Second, Plaintiff cannot articulate any injuries that the Receivership Entities have suffered based on SCK's conduct.  Even if accepted as true, the allegations in the Amended Complaint focus solely on what SCK has done to *consumers*, not to the Receivership Entities. (*See* Am. Compl. ¶ 33).  Plaintiff cannot simply conflate the Receivership Entities' alleged injuries with injuries to the general public.  Moreover, Plaintiff cannot assert that the Receivership Entities were damaged by the payments SCK received, as there is no dispute that Seton and/or AmeriCorp – not the Receivership Entities – made the payments, or further that SCK fulfilled all its obligations under the Support Agreement.  Under these circumstances, Plaintiff has no standing to pursue a declaratory judgment in this action.

**B.    The Support Agreement Comports with Section 877.02**

Plaintiff also fails to allege facts showing that the Support Agreement is illegal under Section 877.02 of the Florida Statutes.[6]  Contrary to Plaintiff's assertion, Section 877.02 does not make it illegal to pay another for marketing legal services or helping to enroll interested consumers.  The statute merely prohibits soliciting specific people to obtain legal business:

> It shall be unlawful for any person or her or his agent, employee or
> any person acting on her or his behalf, to solicit or procure through

---

confers "a right to sue for *enforcement* of the contract . . ."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (emphasis added); *see also Thompson v. Commercial Union Ins. Co. of N.Y.*, 250 So.2d 259, 262 (Fla. 1971) ("the right of a third party beneficiary of a contract [is] to maintain an action for its breach . . ."). Here, in contrast, Plaintiff seeks a declaration that the Support Agreement is illegal and void and to disgorge SCK of payments it received *from a third party*.

[6]    Section 877.02 provides *criminal* penalties for a violation of the statute.  The Florida Legislature chose not to create a civil remedy under Section 877.02.  *See* Fla. Stat. § 772.102.  Hence, even if the Support Agreement violates the statute, Plaintiff has no private right of action to seek disgorgement of payments made under the contract.

> solicitation either directly or indirectly legal business, or to solicit
> or procure through solicitation a retainer, written or oral, or any
> agreement authorizing an attorney to perform or render legal
> service, or to make it a business to solicit or procure such business.

Fla. Stat. § 877.02(1) (2008).  On its face, the statute proscribes targeting specific individuals to

secure legal business, where the recipient has not deliberately sought out the contact.  Although

solicitation is not defined in the statute, this reading comports with the Florida Rules of

Professional Conduct (the "Professional Rules"), which explain the term "solicit" to mean

"contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a

specific recipient . . . ."  R. Regulating the Fla. Bar 4-7.4(a) (2008).  By its terms, Section 877.02

does not prohibit addressing consumers through marketing and advertising campaigns.  It also

does not prohibit paying someone who performs marketing and advertising services.  Rather, as

with the Professional Rules, the statute simply forbids initiating contact with people for the sole

purpose of procuring legal business, behavior far different than that performed by SCK pursuant

to the Support Agreement or even that alleged in the Amended Complaint.

    Case law construing Section 877.02 uniformly confirms that the statute only bans

unwanted contact with specific individuals.  As the Florida Supreme Court has recognized, "[t]he

object of [Section] 877.02(1) is to prohibit the solicitation of legal business by an attorney

directly or by . . . another acting on his behalf."  *Pace v. State*, 368 So.2d 340, 343 (Fla. 1979).

There, the Supreme Court of Florida held that the defendant attorney violated the statute by

instigating a meeting with a prospective college football player that resulted in a retainer

agreement.  *Id.* at 342.  In analyzing the statute, the Court explained that the conduct Section

877.02 prohibits is distinct from traditional advertising, which does not raise the concerns

inherent in direct solicitation: "[u]nlike a public advertisement, which simply provides

information and leaves the recipient free to act upon it or not, in-person solicitation may exert

pressure and often demands an immediate response, without providing an opportunity for comparison or reflection." *Id.* at 345.

Besides a direct, targeted contact, courts analyzing claims under Section 877.02 also focus on whether the communication was initiated by the prospective client. *See, e.g.*, *Florida Bar v. Farber*, 214 So.2d 478, 480 (Fla. 1968). In *Farber*, the defendant attorney went to a doctor's office to meet a car accident victim and his family after receiving an instruction to do so from someone at the garage where the wrecked car had been towed. *Id.* at 479. After the Florida Bar found a violation of Section 877.02, the Florida Supreme Court reversed, finding instead that the defendant "was prompted to believe his professional services were requested . . ." *Id.* at 482. As the Court explained, it "[did] not appear Respondent solely on his own initiative with an unethical intent directly solicited from [the family] . . . ." *Id.* at 480; *see also Agudo, Pineiro & Kates, P.A. v. Harbert Constr. Co.*, 476 So.2d 1311, 1316-17 (Fla. 3d DCA 1985) (remanding case under Section 877.02(2) for additional fact finding, including whether the prospective client had "made the initial contact").

The allegations in the Amended Complaint bear no resemblance to cases finding violations of Section 877.02. First, Plaintiff does not allege that the Support Agreement required SCK to contact specific individuals. Rather, under the Support Agreement's plain terms, SCK's role was limited to performing a generalized marketing campaign (including public advertisements) and fielding calls from members of the public interested in the program. (*See* Support Agreement at Art. V, Secs. 1-4). There is no allegation in the Amended Complaint that SCK targeted any particular individuals. Second, Plaintiff does not allege that SCK initiated contact with consumers. On the contrary, it is undisputed that everyone who communicated with SCK did so only in response to advertisements, as opposed to a direct contact initiated by SCK.

(*See* Am. Compl. ¶¶ 13-15).   Third, the cases involving Section 877.02 turn not on how the person soliciting legal business was paid, but on what actions they took in seeking the engagement.   Here, Plaintiff's sole contention is that the Support Agreement's *payment provisions* – not SCK's conduct – violate the statute.   (*See id*. at ¶ 39).   Section 877.02 says nothing at all about compensation or fee arrangements, and Plaintiff fails to identify any other statute making it illegal to receive payments for marketing legal services.   In light of the above, Plaintiff's claim that the Support Agreement violates Section 877.02 is completely without merit and should be dismissed.

**C.     Plaintiff's Allegations Regarding the Support
        Agreement's Payment Provisions Are Refuted
        by the Contract's Plain Terms, Which Control**

As discussed above, Plaintiff's request for declaratory judgment centers on the Support Agreement's payment provisions, which it claims are illegal.   (*See* Am. Compl. ¶ 39).   Plaintiff contends that SCK's compensation included portions of attorneys fees that consumers paid to the Receivership Entities.   (*Id*. at ¶¶ 12, 23, 26, 34).   These allegations conflict with the clear, unambiguous terms of the Support Agreement.

"[I]f an attached document negates a pleader's cause of action, the plain language of the document will control" and may form the basis for a motion to dismiss.   *Ship Constr. & Funding Servs. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001) (quotations omitted); *see also Griffen Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern") (citations omitted); *accord Harry Pepper & Assoc., Inc. v. Lasseter,* 247 So.2d 736, 736-737 (Fla. 3rd DCA 1971) ("There is an inconsistency between the general allegations of material facts in the amended complaint and the specific facts revealed by the exhibit . . . and

they have the effect of neutralizing each allegation as against the other, thus rendering the pleading objectionable").

On its face, the Support Agreement's plain language belies Plaintiff's allegations that SCK received portions of attorneys' fees.  As relevant here, the contract provides that "[Seton] agrees to pay SCK, for its marketing and administrative services, subject to adjustment as provided herein, a fee equal to approximately 60% of the Discount Rate Payments [this term is undefined] plus a monthly administrative fee . . . ."  (Support Agreement at Art. VI, Sec. 1.1).  "Discount Rate Payments" is not defined in the Support Agreement, nor is there any indication in the contract the parties intended this to refer to legal fees.[7]  On the contrary, they explicitly stated that legal fees were not a factor in payments made to SCK: "It is specifically understood by the parties that under no circumstances shall the compensation paid to SCK be based on a percentage or any portion of any legal fees collected by [the Receivership Entity], either directly or indirectly."  (*Id*.).

The above provisions are clear and unambiguous.  By suggesting otherwise, Plaintiff tries to re-write the Support Agreement to fit its theory of liability, which violates fundamental tenets of contract interpretation.  *See e.g. Misala, Inc. v. Eagles*, 662 So.2d 1389, 1389 (Fla. 4th DCA 1995) ("It is a well-settled principal of contract law that where the terms of a contract are unambiguous, the parties' intent must be determined from the 'four corners' of the document.").  Relying only on the four corners of the Support Agreement, it is clear that Plaintiff's allegations are at odds with the contract's plain language, meaning the Support Agreement controls and Plaintiff's claims should be dismissed.

---

[7]     Seton and SCK set out a number of factors determining SCK's compensation under the Support Agreement, none of which involve legal fees.  (*Id*. at Art. VI, Sec. 1.2).

**D.      Even if Deemed Illegal, the Support
Agreement's Savings Clause Would Apply**

The parties also expressed in unambiguous terms their desire that the Support

Agreement remain in effect and be enforceable even if portions of the contract were found to be

illegal:

> If any provision of this Agreement or the application thereof is
> held to be invalid, void or illegal, such provision shall be declared
> severed and the remainder of this agreement shall not be affected
> thereby.  In the event any portion of provision hereof shall be
> deemed illegal or unenforceable for any reason, there shall be
> deemed to be such minor change in the portion or provision as is
> necessary to make it valid and enforceable as so modified.

(Support Agreement at Art. VIII, Sec. 8).  Thus, assuming the Support Agreement's payment

provisions are found to be illegal – which they are not – the contract nonetheless must be deemed

valid as modified so as to render it enforceable per the parties' stated intent.

**III.
PLAINTIFF'S ALLEGATIONS, EVEN IF TRUE,
FAIL TO STATE A CLAIM UNDER FDUTPA**

Count II of the Amended Complaint seeks damages for SCK's alleged violation

of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-

213.[8]  FDUTPA is a consumer protection law that makes unlawful any "[u]nfair methods of

competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

conduct of any trade or commerce . . . ."  Fla. Stat. 501.204(1).  As with Plaintiff's claim for

declaratory judgment, Plaintiff's claim for legal relief under FDUTPA should also be dismissed

for the reasons set forth below.

---

[8]      Plaintiff also seeks a declaration that the Support Agreement is illegal under FDUTPA
(Count I).  As discussed in this section, Plaintiff fails to allege a violation of the statute,
which necessary precludes a declaration in its favor.

**A.      Plaintiff Fails to Plead its FDUTPA**
    **Claim with Particularity**

"Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of [Fed. R. Civ. P.] 9(b).  In light of this trend, claims arising under FDUTPA must be plead with particularity."  *Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008) (dismissing plaintiff's claim for failure to allege with particularity any facts to support a violation under FDUTPA); *see Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, at *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA complaint because plaintiff did not allege specific facts supporting the claim). [9]

Plaintiff's allegations in this case fall well short of any type of heightened pleading standard required of FDUTPA claims.  The allegations concerning SCK's alleged deceptive and unfair acts are vague and conclusory, at best.  (*See* Am. Compl. ¶¶ 29-37). Among other things, Plaintiff fails to identify any information about representations SCK made to consumers, the names of the consumers, the time, place, and method of *any* representation, the persons responsible for making the representations, the content of the representations, and the effect representations had on specific consumers.  Indeed, Plaintiff has not alleged facts concerning even a single misrepresentation that SCK supposedly made to a consumer. [10]  Since

---

[9]      SCK's research revealed contrary authority within the Florida district courts.  *See e.g. Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *1 (S.D. Fla. Nov. 26, 2007) (stating that heightened pleading requirements of Rule 9(b) do not apply to causes of action under FDUTPA).  The latest court to address the issue – *Wrestlereunion, LLC*, cited above – imposed the heightened standard.  In any event, the Amended Complaint contains so few details concerning SCK's allegedly unfair and deceptive practices that it is objectionable under either standard.

[10]     As support for its claim, Plaintiff points to a Consent Judgment entered in Florida state court on November 25, 2008 in action involving the Florida Attorney General.  In it,

the Amended Complaint fails to meet the requisite pleading requirements, Plaintiff's FDUTPA

claim should be dismissed in its entirety.

**B.** **Plaintiff Lacks Standing to Bring FDUTPA**
       **Claims as Alleged in the Amended Complaint**

FDUTPA was designed to "protect the consuming public and legitimate business

enterprises from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat.

501.202(2); *see Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2007).   In

promulgating FDUTPA, "the Florida legislature clearly intended to bestow additional

substantive remedies on the citizens of this state to recover economic damages related solely to a

product or service purchased in a consumer transaction infected with unfair or deceptive trade

practices or acts."  *Shibata, M.D. v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000).

"While the statute has been amended to expand protection to corporate entities

acting as consumers, Florida case law since the 1993 amendments still requires the plaintiff to

act in some manner as a consumer in the conduct of trade or commerce."  *Cannova v.*

*Breckenridge Pharm., Inc.*, No. 08-81145-CIV, 2009 WL 64337, at *3 (S.D. Fla Jan. 9, 2009)

(Marra, J.) (dismissing FDUTPA claim where plaintiff did not plead any allegations that it acted

as a consumer); *see Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv-747-J-33HTS, 2008 WL

2950112, at *8-9 (M.D. Fla. July 31, 2008) (dismissing FDUTPA claim brought by beneficiary

of construction bonds because it was not a purchaser of goods or services); *see also Badillo v.*

---

defendants Laura Hess and the Receivership Entities (through Plaintiff) acknowledge that
they "engaged in unfair and deceptive acts or practices in the conduct of trade and
commerce," in violation of FDUTPA.  (Consent Judgment at p. 4).  Significantly, the
Consent Judgment never mentions SCK or any other marketing companies.  Moreover, it
was reached in a separate action involving different parties and different issues.  The
Consent Judgment therefore has no bearing on this action.

*Playboy*, No. 8:04-cv-591-T-30TBM, 2006 WL 785707, at *6 (M.D. Fla 2006) (collecting Florida cases finding no FDUTPA claims where plaintiffs failed to demonstrate they had purchased good or services).

Here, Plaintiff's allegations do not support that the Receivership Entities acted as consumers or purchasers with respect to SCK's marketing and advertising services. If anything, they establish that Seton, not the Receivership Entities, engaged SCK in the manner contemplated under the statute. Because the Receivership Entities were not a party to the Support Agreement, and had no corresponding obligation to pay SCK for its services, Plaintiff has no basis to bring a FDUTPA claim against SCK.

Further, the Receivership Entities share little in common with the consumers and businesses FDUTPA was intended to protect. By Plaintiff's own admission, the Receivership Entities engaged in a deceptive scheme inducing consumers to pay millions of dollars for services that were never provided. (*See* Am. Compl. ¶¶ 6, 8-9). As such, the Receivership Entities cannot be considered legitimate business enterprises worthy of protection under FDUTPA.

**C.**     **The Receivership Entities Have Not Been Aggrieved**
           **by the Conduct Alleged in the Amended Complaint**

Under the statute, only persons who have been "aggrieved" by unfair and deceptive acts can establish a cause of action. *See* Fla. Stat. § 501.211(1); *see Prohias v. Phizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007) ("to state a claim under [FDUTPA], [plaintiff] must allege, at a minimum, that she has been aggrieved"); *see also Macias v. HBC of Florida, Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997) ("in order for the consumer to be entitled to any relief under FDUTPA, the consumer must . . . plead and prove that he or she was aggrieved by the unfair and deceptive act"). This presents yet another bar to Plaintiff's claim.

Plaintiff alleges that "[SCK] engaged in a systematic pattern of conduct designed and intended to induce consumers to purchase the services of the Receivership Entities via a series of misleading, false, deceptive or fraudulent representations."  (Am. Compl. ¶ 45).  Even if accepted as true, Plaintiff's allegations show only that the general public has been touched by SCK's conduct.  (*See id*. at ¶ 33).  Plaintiff fails to allege – nor can it – that the Receivership Entities have been aggrieved in any way.[11]

Courts have consistently held that plaintiffs bringing claims for damages under FDUTPA cannot rely on another's injury to satisfy the requirement that they be actually aggrieved or damaged.  *See Rollins*, 951 So.2d at 871-73 (reversing certification of FDUTPA class action where some members of the putative class had not been aggrieved or suffered a loss due to the allegedly deceptive and unfair acts); *see also Prohias*, 485 F. Supp. 2d at 1336 (dismissing FDUTPA claim in purported class action where class representative could not show they were actually injured or aggrieved by allegedly misleading advertisement).  Nor, for that matter, can plaintiffs sue for injuries to the public at large.

**D.  Plaintiff Fails to Articulate How The Receivership Entities Have Been Damaged by SCK's Alleged Conduct**

"To maintain a private cause of action for legal . . . relief under the FDUTPA, a plaintiff must show not only that the conduct complained of was unfair, unconscionable, or deceptive, but also that it has suffered actual damages proximately caused by the unlawful conduct."  *Hanson Hams, Inc. v. HBH Franchise Co., LLC*, No. 03-61198-CIV, 2004 WL 5470401, at *4 (S.D. Fla. Dec. 21, 2004); Fla. Stat. § 501.211(2) (damages are recoverable "by a person *who has suffered a loss* as a result of a violation of this part") (emphasis added).  Here,

---

[11]     Indeed, it defies logic that SCK could have misled or deceived the Receivership Entities about their own deceptive scheme.

Plaintiff alleges, without any further explanation, that "[a]s a result of [SCK's] deceptive and unfair trade practices, the Receivership Entities have been damaged in an amount of at least $4,558,080" – i.e., the payments Seton made to SCK for its services under the Support Agreement.  (Am. Compl. ¶ 48).

The standard for determining actual damages recoverable under FDUTPA is well-defined under Florida law:

> As a general rule, the measure of actual damages . . . is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.  A notable exception to the rule may exist when the product is rendered valueless as a result of the defect – then the purchase price is the appropriate measure of actual damages.

*Hanson Hams, Inc. v.*, 2004 WL 5470401, at *9;  *Rollins*, 951 So.2d at 869.  Under either standard, it is clear the Receivership Entities have suffered no damages.

Importantly, Plaintiff does not challenge the actual market value of SCK's marketing and advertising services to Seton.  This is not surprising, for there is no dispute that SCK fulfilled all its obligations under the Support Agreement.  It also necessarily undermines Plaintiff's FDUTPA claim, as Plaintiff fails to allege that there was a difference between the services bargained for and those SCK provided to Seton, a hallmark of damages under the statute.

The exception to the rule likewise does not help Plaintiff.  Plaintiff does not allege that the services SCK performed were rendered valueless due to SCK's conduct.  By Plaintiff's own account, any payments made to SCK were contingent upon SCK referring customers to the Receivership Entities.  (*See* Am. Compl. ¶¶ 26, 34-36).  In other words, SCK was only paid *after* it brought in clients; it was not compensated up front.  Had SCK provided no services, or if its

services were valueless, SCK would not have been paid any money at all.  This was obviously not the case.  At any rate, Plaintiff does not contest that Seton and/or AmeriCorp made the payments to SCK, meaning any damages would be theirs alone.

## IV.
## SCK HAS NOT BEEN UNJUSTLY ENRICHED

Count III of the Amended Complaint alleges that SCK has been unjustly enriched in light of the payments it received under the allegedly illegal contract.  (*See* Am. Compl. ¶¶ 50-51).   The elements of unjust enrichment are: (1) the plaintiff conferred a benefit on the defendant, who has knowledge of that benefit; (2) the defendant voluntarily accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it.  *N.G.L. Travel Assocs. v. Celebrity Cruises*, 764 So.2d 672, 675, n.5 (Fla. 3d DCA 2000).  Putting aside that the Support Agreement is not illegal, for the reasons described above, there are additional defects which preclude Plaintiff's unjust enrichment claim.

First, Plaintiff does not dispute that SCK provided valuable services in exchange for payments from Seton.   Plaintiff's omission is significant, for it acknowledges that any benefits conferred upon SCK were repaid by virtue of SCK's marketing and advertising services to Seton.  This is fatal to Plaintiff's claim, as it is axiomatic that "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *American Safety Ins. Serv, Inc.. v. Griggs*, 959 So.2d 322, 331-32 (Fla. 5th DCA 2007) (citations omitted); *Glick Co. v. Sunshine Ready Concrete Co.*, 651 So.2d 190, 190 (Fla. 4th DCA 1995) (unjust enrichment "cannot exist where payment has been made for the benefit conferred").

Further, the Receivership Entities did not confer a direct benefit on SCK.  *See Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Florida*, 667 So.2d 876, 879 (Fla.

3d DCA 1996) (dismissing unjust enrichment claim where plaintiff "could not and did not allege that it had directly conferred a benefit on the defendants").  Under the Support Agreement, Seton was charged with paying SCK for its services.  Because Seton and/or AmeriCorp were the ones compensating SCK, any benefit conferred upon SCK was attributable to them, thus barring Plaintiff's unjust enrichment claim.  *See Titlton v. Playboy Entertainment Group, Inc.*, No. 88:05-cv-692-T-30TGW, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007) (dismissing plaintiff's unjust enrichment claim because it did not allege a direct benefit); *see also Hunstman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998) ("the court must find that plaintiffs . . . have likewise failed to allege that they directly conferred any benefit on [defendants], even though they arguably did so indirectly").

<u>**CONCLUSION**</u>

For all the reasons set forth above, SCK's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be granted in all respects, together with such other and further relief as this Court may deem just and proper.

Dated: Fort Lauderdale, Florida
      January 16, 2009


KELLEY DRYE & WARREN LLP
Robert S. Friedman (pro hac vice)
J. Jamari Buxton (pro hac vice)
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

MOSKOWITZ, MANDELL, SALIM &
  SIMOWITZ, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, Florida  33334
Telephone: (954) 491-2000
Facsimile: (954) 491-2051


By:   s/ Ari J. Glazer
      Ari J. Glazer
      Florida Bar No. 194212
      Email: aglazer@mmsslaw.com

Attorneys for Defendant
SCK Solutions, LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 16, 2009, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

KELLEY DRYE & WARREN LLP
Robert S. Friedman (pro hac vice)
J. Jamari Buxton (pro hac vice)
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

MOSKOWITZ, MANDELL, SALIM &
  SIMOWITZ, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, Florida  33334
Telephone: (954) 491-2000
Facsimile: (954) 491-2051


By:   s/ Ari J. Glazer
       Ari J. Glazer
       Florida Bar No. 194212
       Email:  aglazer@mmsslaw.com

Attorneys for Defendant
SCK Solutions, LLC

**<u>SERVICE LIST</u>**

Rene D. Harrod, Esq.
rharrod@bergersingerman.com
Berger Singerman
Attorneys for Receiver Daniel J. Stermer
350 East Las Olas Blvd.
Suite 1000
Fort Lauderdale, Florida  33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872
**<u>By Notice of Electronic Filing generated by CM/ECF and U.S. Mail</u>**


Rik Stanford Tozzi, Esq.
rtozzi@starneslaw.com
Starnes & Atchison LLP
PO Box 598512
Birmingham, AL 35259-8512
Telephone: (205) 868-6024
Facsimile: (205) 868-6099
**<u>By U.S. Mail</u>**