UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CV-61751-MARRA/JOHNSON

DANIEL J. STERMER, as Receiver for
Laura Hess & Associates, P.A., Hess
Kennedy, Consumer Law Center, Legal
Debt Center, Campos Chartered Law
Firm, et al.,

                Plaintiff,

v.

SCK SOLUTIONS, LLC,

                Defendant.
_____/

**DEFENDANT SCK SOLUTIONS, LLC'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant SCK Solutions, LLC ("SCK"), by and through its undersigned counsel, respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss the First Amended Complaint ("Amended Complaint") of Plaintiff Daniel J. Stermer ("Plaintiff"), as receiver on behalf of Hess Kennedy and its various affiliates, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state claims upon which relief may be granted.

## PRELIMINARY STATEMENT

Plaintiff's Opposition fails to rebut any of SCK's arguments demonstrating that the Amended Complaint should be dismissed. In its Moving Brief, SCK showed that Plaintiff lacks standing to seek a declaratory judgment, that SCK's conduct as alleged in the Amended Complaint comports with both Section 877.02 of the Florida Statutes and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and that SCK has not been unjustly enriched by receiving payments for its marketing and advertising services. Plaintiff is unable to refute any of these points. It is instead forced to rely on misguided theories and extrinsic evidence which strain the facts, applicable statutes, and case law. Plaintiff also argues that SCK has gone outside the four corners of the Amended Complaint by relying on facts taken from the Support Agreement, which Plaintiff attached to its pleadings. However, SCK has every right to do so, especially where the written instrument conflicts with Plaintiff's allegations. Ironically, in an attempt to salvage its claims, Plaintiff resorts to arguing facts not alleged in the Amended Complaint, including the Receivership Entities' purported intent to repay consumers with the money it wrongfully is trying to disgorge from SCK. No matter how Plaintiff characterizes the facts, it is clear Plaintiff's claims are simply not viable. This is a classic case of Plaintiff trying to nail a square peg into a round hole.

# I.
## THE SUPPORT AGREEMENT REFUTES PLAINTIFF'S ASSERTION THAT THE RECEIVERSHIP ENTITIES HAD A DIRECT CONTRACTUAL ARRANGEMENT WITH SCK AND MADE PAYMENTS TO SCK

Plaintiff argues that (a) SCK cannot rely on facts in the Support Agreement and (b) Plaintiff's allegations must always be taken as true. Plaintiff is wrong on both accounts.

Since it was attached to the Amended Complaint, SCK can rely on the Support Agreement as a basis for its motion to dismiss. Fed. R. Civ. P. 10(c); *see Ship Constr. & Funding Servs. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001). Moreover, if a plaintiff's allegations conflict with the written instrument it attaches, the written instrument must control. *See Griffen Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Such a conflict is present here. Plaintiff asserts that (a) the Receivership Entities had "a direct contractual arrangement" with SCK (Op. Memo at 8; Am. Compl. ¶ 29) and (b) the Receivership Entities made payments to SCK under this arrangement. (Am. Compl. ¶ 34).[1] The Support Agreement directly rebuts these allegations. It instead makes clear that Seton and SCK were the only parties to the agreement. (Support Agreement at 1). Campos is listed as a third party beneficiary only. (*Id.* at Art. VI, Sec. 1.7). It also makes clear that Seton alone was to pay SCK for its services. (*Id.* at Art. VI, Sec. 1.1). Both facts are fatal to Plaintiff's claim.

Plaintiff tries to circumvent the clear wording of the contract by asserting there were "oral contracts and agreements as well as a course of dealing" in which SCK acted as a Referring Agent for the Receivership Entities. (Op. Memo at 2; Am. Compl. ¶ 29). Significantly, Plaintiff does not allege there were oral contracts *between* the Receivership Entities and SCK. It is also telling that Plaintiff fails to identify even the most basic terms of the

---

[1]   Plaintiff alleges that the Receivership Entities paid SCK "either directly or through the intermediary of Seton." (Am. Compl. ¶ 34). Notably, Plaintiff fails to identify which

supposed contracts (e.g., the dates executed, parties involved, or the consideration agreed upon). To the extent Plaintiff implies a course of dealing which somehow modified the arrangement under the Support Agreement, the contract contains an integration clause, which requires that any modifications be made in a signed, written agreement, which Plaintiff also fails to allege. (Support Agreement at Art. VIII, Sec. 1). In sum, Plaintiff's allegations fall well short of establishing "a direct contractual arrangement" with SCK.

## II.
## PLAINTIFF FAILS TO ALLEGE FACTS ENTITLING IT TO DECLARATORY RELIEF

### A. Plaintiff's Opposition Confirms That It Lacks Standing

#### 1. No Justiciable Controversy Exists

Plaintiff first contends that a justiciable controversy does not depend on contractual privity, and that, in any event, the Receivership Entities had a direct contractual arrangement with SCK. (Op. Memo at 8). As discussed above, this is inaccurate. Plaintiff also cites *Enns-Halbe Co. v. Templeton*, 101 Fla. 609, 614-15 (1931), for the proposition that the third party beneficiary doctrine establishes a relationship between parties equivalent to technical privity. (Op. Memo at 8). However, *Enns-Halbe Co.* does not hold that a third party beneficiary can sue to *rescind* a contract. Rather, it states the well-settled rule that a third party beneficiary can maintain an action upon a promise made for its benefit – in other words, it can sue the promisor for the promisor's breach or to enforce the promise. *Id.* at 614-15. Plaintiff here alleges something far different – it is trying to insert itself between two contracting parties to strike down their bargained-for agreement. Not surprisingly, Plaintiff cites no authority holding it can rightfully do so. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005)

---

payments the Receivership Entities supposedly made to SCK, and which payments came "indirectly" from Seton.

(designation as a third party beneficiary ordinarily confers "a right to sue for *enforcement* of the contract . . .") (emphasis added); *see also Thompson v. Commercial Union Ins. Co. of N.Y.*, 250 So.2d 259, 262 (Fla. 1971) ("the right of a third party beneficiary of a contract [is] to maintain an action for its breach . . .").

### 2. The Receivership Entities Have Not Been Injured

Plaintiff also cannot demonstrate that the Receivership Entities have been injured, another prerequisite for declaratory relief. (*See* Mov. Memo at 7-8). Plaintiff asserts that "[t]he Receivership Entities' injuries consist of the more than $4.5 million paid to SCK." (Op. Memo at 8). Even assuming the Receivership Entities made direct payments to SCK, there is still no dispute that SCK provided the very services for which it had been paid. It defies common sense that the Receivership Entities could be damaged by making voluntary payments for services they or an intermediary admittedly commissioned. Further, there is no causal link between the Receivership Entities' supposed injuries and SCK's conduct. Indeed, Plaintiff does not allege that SCK deceived or misled the Receivership Entities. If anything, Plaintiff's allegations suggest that *consumers* would have been injured by SCK's alleged actions. (*See* Am. Compl. ¶ 33; Op. Memo at 4). Plaintiff, however, is not suing on behalf of the public. Plaintiff asserts that, based on the allegedly deceptive scheme, "the Receivership Entities are liable to the consumers referred by SCK." (Op. Memo at 7). Besides being irrelevant, Plaintiff never alleges this in the Amended Complaint. Plaintiff is therefore precluded from relying on this assertion on this motion to dismiss.

*Vista Designs v. Silverman, P.C.*, 774 So. 2d 884, 885 (Fla. 4th DCA 2001), the sole case cited by Plaintiff for its injury argument, is not on point. It held that an attorney who engaged in the unauthorized practice of law could not recover fees owed to him, and that fees already paid should be disgorged to the client. Several key facts distinguish this case from *Vista*

*Designs*. First, *Vista Designs* involved a contract between two direct parties (a lawyer and a client), not a third party beneficiary relationship. Second, the client in *Vista Designs* paid the lawyer directly, not indirectly or through an intermediary. Third, the *Vista Designs* court found that the attorney had, in fact, engaged in the unauthorized practice of law. Here, in contrast, SCK's conduct comports with both Section 877.02 and FDUTPA. Since SCK has not violated either statute, the Receivership Entities could not have suffered any injury caused by SCK.

**B.  Plaintiff Fails to Allege Facts Showing the
Support Agreement Violates Section 877.02**

SCK demonstrated in its Moving Brief that Section 877.02 does not prohibit traditional marketing and advertising, such as that contemplated in the Support Agreement. Rather, the statute makes it illegal to target and contact specific individuals in hopes of securing legal business. (*See* Mov. Memo at 8-10, discussing cases under Section 877.02). On their face, Plaintiff's allegations reveal that SCK did nothing wrong. Plaintiff's opposition fails to add anything new which would suggest SCK violated the statute. Plaintiff does not contend that SCK targeted specific consumers, or even that SCK initiated contact with consumers. (*See* Am. Compl. ¶¶ 13-15; Op. Memo at 9-11). Quite the opposite, Plaintiff acknowledges that any contact SCK had with consumers occurred because the consumers had themselves reached out to SCK. (*See id.*; Op. Memo at 4). This conclusively refutes Plaintiff's claim that SCK violated the statute.

Instead, Plaintiff advances the novel theory that SCK engaged in solicitation by *answering calls* from consumers responding to SCK's marketing and advertising campaign. (Op. Memo at 9-10). According to Plaintiff, "[t]he consumer usually learned for the first time during this contact that he would be entering an attorney-client relationship with one of the Receivership Entities." (Am. Compl. ¶ 15). Thus, Plaintiff argues, "the fact that the consumer

- 5 -

initiated the contact with SCK is a distinction that makes no difference." (Op. Memo at 11, n. 6). Predictably, Plaintiff can cite no authority for this creative extension of the law.

Plaintiff also argues that consumers who contacted SCK were at risk of being coerced into making an "on the spot and uninformed decision to create an attorney-client relationship," which Section 877.02 was designed to prevent. (Op. Memo at 10). However, nowhere in the Amended Complaint does Plaintiff allege that consumers were forced to make "on the spot" decisions after they called SCK. Plaintiff simply manufactures these allegations in its Opposition. As such, Plaintiff's solicitation claim lacks merit.[2]

### III.
### PLAINTIFF DOES NOT STATE A FDUTPA CLAIM

**A.  Plaintiff's Allegations Lack Sufficient Detail**

In its Moving Brief, SCK cited authority that FDUTPA claims must satisfy the heightened pleading standards under Fed. R. Civ. P. 9(b). (Mov. Memo at 14). Plaintiff tries to distinguish this authority by arguing that, unlike plaintiffs in those cases, Plaintiff's allegations here contain actual substance. (Op. Memo at 14-15).[3] This contention fails.

---

[2]  Plaintiff cites to *Thomas v. Ratiner*, 462 So.2d 1157 (Fla. 3d DCA 1985) and *Vista Designs*, 774 So.2d 884, in support of its argument that Plaintiff can disgorge payments made to SCK. Putting aside that the Support Agreement is not illegal, *Thomas* is distinguishable for the same reasons as *Vista Designs*. *Thomas* actually supports SCK's argument that it did not violate Section 877.02, as it involved an attorney/doctor who improperly approached a specific hospital patient to obtain a legal retainer in violation of the statute. 462 So.2d at 1159.

[3]  Plaintiff contends those plaintiffs alleged "nothing more than that the defendant had acted in an unfair and deceptive manner." (Op. Memo at 14). While *Wrestlereunion* and *Florida Digital Network* did note such cursory allegations, they also pointed out that the FDUTPA sections of the respective complaints had incorporated preceding allegations, and that those allegations – like Plaintiff's allegations here – were too vague and conclusory to support a claim under the statute. *See Wrestlereunion, LLC v. Live Nation Television Holding, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859 (M.D. Fla. Aug. 4, 2008); *see also Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163 (M.D. Fla. Aug. 30, 2006).

- 6 -

Plaintiff's allegations are devoid of any detail whatsoever. Among other things, Plaintiff fails to identify any specific misrepresentations SCK made to consumers or the details surrounding the communications. (*See* Mov. Memo at 14).[4] In its Opposition, Plaintiff contends that "[g]iven the large number of clients referred by SCK, it is inappropriate to require [Plaintiff] to recite specific misrepresentations by SCK." (Op. Memo at 15). Still, Plaintiff has not offered even *a single example* of how SCK misled or deceived a particular consumer. This is not by accident. As Plaintiff acknowledges, it filed a number of "nearly-identical" actions against other so-called "Referring Agents." (*Id.* at 3, n.2 ). Comparing the Amended Complaint to these complaints reveals that Plaintiff simply cut and pasted its allegations from one pleading to another without regard to the specific facts in each case.[5] The allegations are virtually verbatim, including those concerning how the Referring Agents supposedly misled and deceived consumers.[6] The Amended Complaint is simply a boilerplate pleading with no apparent pre-filing investigation.

Plaintiff cites *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993), for the proposition that "[t]he requirements of particularity under Rule 9(b) vary with the facts of

---

[4] Plaintiff's own authority underscores the inadequacy of its pleadings. *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993) ("At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby") (quotation and citation omitted); *see also Fin. Bus. Equip. Solutions, Inc. v. Quality Data Systems, Inc.*, Case No.: 08-6-769-CIV, 2008 U.S. Dist. LEXIS 87152, at *5-6 (S.D. Fla. Oct. 27, 2008).

[5] Two such complaints are attached to this Reply. Although the Court must only consider the pleadings and written instruments attached thereto on a motion to dismiss, Plaintiff invited this comparison by attaching documents concerning these other actions to its Opposition. (*See* Op. Memo at 3, n. 4).

[6] Plaintiff argues that "SCK does not challenge the particularity of the [Amended Complaint] with respect to SCK's aiding and abetting the scheme or with respect to SCK's violation of Fla. Stat. Section 877.02(1)." (Op. Memo at 15). This is also false. All Plaintiff's allegations are vague and give no meaningful detail concerning what SCK supposedly did, to whom, when this occurred, and so on. (*See* Mov. Memo at 14).

-7-

each case." (Op. Memo at 15). Yet Plaintiff's allegations fail to meet even a relaxed interpretation of Rule 9(b), as courts still require at least some degree of specificity to withstand a motion to dismiss. *See United States ex rel. Blesdoe v. Community Health Systems, Inc.*, 501 F.3d 493, 510-515 (6th Cir. 2008) (dismissing paragraphs in plaintiff's complaint for failure to provide "characteristic examples that are illustrative of the class") (internal citations and quotations omitted); *see also United States v. Dianon Systems, Inc.*, 231 F.R.D. 122, 123-24 (D. Conn. 2005) (stating that although it would be unrealistic and inappropriate to expect the plaintiff to detail tens of thousands of billings, the plaintiff "could easily illustrate the very general allegations of its complaint . . . with a number of specific exemplars"). In contrast to this authority, Plaintiff has failed to allege even one specific or representative example of SCK's allegedly deceptive conduct. Plaintiff therefore has failed to meet the requirements of Rule 9(b) under either a strict or a relaxed interpretation of that standard.

Alternatively, Plaintiff argues it should be relieved of the specificity requirements because SCK "presumably has its own records of the consumers it referred to the Receivership Entities . . ." (Op. Memo at 16). These facts are not "superfluous detail," as Plaintiff characterizes them in its response, (*id.* at 16), but rather are essential details that form the factual bases of the Amended Complaint. Plaintiff's authority on this point undercuts its own argument. *United States v. Baxter International, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003) stated that courts allow the pleader leeway where the information supporting the complaint is "under the *exclusive* control of the defendant." (emphasis added). Here, the consumers were the Receivership Entities' clients, not SCK's, and therefore Plaintiff is in at least the same – if not a better – position to identify these individuals. Further, Plaintiff alleges that the interaction between the consumers and the Referring Agents was "often conducted pursuant to a script provided by or

- 8 -

developed in conjunction with the Receivership Entities." (Am. Compl. ¶ 15). This likewise refutes Plaintiff's argument that the information underlying the Amended Complaint lies within SCK's knowledge or control.

**B.      Plaintiff Has No Standing to Bring a FDUTPA Claim**

Plaintiff also fails to rebut SCK's argument that it lacks standing to make a FDUTPA claim. (*See* Mov. Memo at 15). To have standing under the statute, a plaintiff must "act in some manner as a consumer in the conduct of trade or commerce." *Cannova v. Breckenridge Pharm., Inc.*, No. 08-81145-CIV, 2009 WL 64337, at *3 (S.D. Fla Jan. 9, 2009) (Marra, J.). Plaintiff argues it meets this requirement because it "stands in the shoes of the Receivership Entities, which purchased SCK's marketing services and, therefore, qualifies as a consumer." (Op Memo at 16). But as discussed earlier, the Support Agreement confirms that Seton – which actually contracted with SCK – was the purchaser of SCK services. This fact strips Plaintiff of standing to pursue its FDUTPA claim.

**C.      Plaintiff Has Not Been Aggrieved or Suffered a Loss**

In its Moving Brief, SCK argued that the Receivership Entities have not been aggrieved by SCK's conduct nor have they suffered a loss, thus precluding Plaintiff from suing and recovering damages under FDUTPA. (*See* Mov. Memo at 16-19).[7] Plaintiff responds that "the Receivership Entities suffered a loss in the amount of their $4.5 million payments to SCK," thus entitling it to sue for damages. (Op. Memo at 17).[8] This argument has no merit.

---

[7]  The statute provides that "anyone aggrieved" by a FDUTPA violation may bring an action for declaratory judgment. Fla. Stat. § 501.211(1). To recover damages, a plaintiff must show that it has "suffered a loss" as a result of a violation. Fla. Stat. § 501.211(2).

[8]  Plaintiff asserts this money "is rightfully an asset of the Receivership Entities to be used to compensate the deceived consumers pursuant to the Order appointing the Receiver." (Op. Memo at 17). Again, Plaintiff never alleges this in the Amended Complaint. It therefore cannot be considered in this motion to dismiss.

Again, there is no causal connection between the payments SCK received and any loss suffered by the Receivership Entities. SCK was hired to perform marketing and advertising services. It performed those services and was voluntarily paid in exchange for its work. Plaintiff does not allege that the value of the services SCK performed was less than what was promised, the typical measure of damages under FDUTPA.[9] More important, Plaintiff does not allege that SCK ever misled or deceived the Receivership Entities. Thus, to the extent the Receivership Entities "suffered a loss," that loss was not occasioned by SCK. Nor can Plaintiff premise its FDUTPA claim on losses allegedly suffered by consumers, as Plaintiff brings this action on behalf of the Receivership Entities. (*See* Mov. Memo at 16-17). As such, Plaintiff cannot show that it has been aggrieved by SCK or suffered a loss as required under the statute.

## IV.
## PLAINTIFF FAILS TO SHOW THAT SCK HAS BEEN UNJUSTLY ENRICHED

Finally, Plaintiff's response fails to rebut SCK's argument that the Amended Complaint does not state a claim for unjust enrichment. (*See* Mov. Memo at 19-20). In fact, Plaintiff ignores the elements of unjust enrichment altogether. It cites no authority in support of its claim or even to refute the cases cited by SCK. Plaintiff merely contends it would be inequitable for SCK to retain the money because the Support Agreement is illegal. As set forth above, however, there has been no violation of statutory law rendering the contract illegal, so there is no inequitable basis upon which to enter a finding of unjust enrichment. Further, there are no inequities in SCK keeping the payments it received as consideration for its services, as SCK performed the exact services it promised to Seton. Plaintiff has not alleged otherwise.

---

[9] Plaintiff argues that the difference in value standard only applies to cases involving the sale and purchase of goods or services. That is exactly what was involved here. SCK does not contest that a different method of computing damages may apply under a different factual scenario, as in a defamation case. (*See* Op. Memo at 18-19).

## CONCLUSION

For all the reasons set forth above and in SCK's Moving Brief, SCK's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be granted in all respects, together with such other and further relief as this Court may deem just and proper.

Dated: Fort Lauderdale, Florida
February 5, 2009

                    MOSKOWITZ, MANDELL, SALIM &
                    SIMOWITZ, P.A.

BY: s/ Ari J. Glazer
     Ari J. Glazer
     Florida Bar No. 194212
     800 Corporate Drive, Suite 500
     Fort Lauderdale, Florida 33334
     Telephone: (954) 491-2000
     Facsimile: (954) 491-2051
     Email: aglazer@mmsslaw.com

     Attorneys for Defendant
     SCK Solutions, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 5, 2009, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

        MOSKOWITZ, MANDELL, SALIM & SIMOWITZ, P.A.

800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Tel: (954) 491-2000
Fax: (954) 491-2051


BY: s/ Ari J. Glazer
      ARI J. GLAZER
      Florida Bar No. 194212
      Email: aglazer@mmsslaw.com

## SERVICE LIST

Rene D. Harrod, Esq.
rharrod@bergersingerman.com
Berger Singerman
Attorneys for Receiver Daniel J. Stermer
350 East Las Olas Blvd.
Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872
**By Notice of Electronic Filing generated by CM/ECF and U.S. Mail**


Rik Stanford Tozzi, Esq.
rtozzi@starneslaw.com
Starnes & Atchison LLP
PO Box 598512
Birmingham, AL 35259-8512
Telephone: (205) 868-6024
Facsimile: (205) 868-6099
**By U.S. Mail**