UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61751-CIV-MARRA/JOHNSON

DANIEL J. STERMER, as Receiver for
Laura Hess & Associates, P.A., Hess
Kennedy, Consumer Law Center, Legal
Debt Center, Campos Chartered Law Firm,
et al.,

       Plaintiff,

vs.

SCK SOLUTIONS, LLC, a Delaware
Limited Liability company,

       Defendant.

_____/

## ORDER AND OPINION ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant, SCK Solutions LLC's ("Defendant"

or "SCK") Motion to Dismiss the Amended Complaint (DE 20).  Plaintiff Daniel J. Stermer as

Receiver for Laura Hess & Associates, P.A., Hess Kennedy, Consumer Law Center, Legal Debt

Center, Campos Chartered Law Firm, et al. ("Plaintiff" or "Receiver") filed a response to the

motion (DE 22), and Defendant filed a reply (DE 23).  The Court has carefully reviewed the

motion, the response, and the reply, and is otherwise fully advised in the premises.

**Background**

On September 26, 2008, Plaintiff filed a Complaint against Defendant in the Circuit

Court of the Seventeenth Judicial District, in and for Broward County. (DE 1).  Defendant

removed the action to this Court on the basis of diversity jurisdiction. (DE 1).  Plaintiff filed an

Amended Compaint (DE 13), on December 4, 2008, for Declaratory Judgment (Count I),

Deceptive and Unfair Trade Practices (Count II), and Unjust Enrichment (Count III).

Plaintiff Daniel J. Stermer was appointed by a Florida state court as Receiver for Laura Hess & Associates, P.A. and several related companies ("Receivership Entities"). The Receivership Entities were engaged in a fraudulent scheme that became the target of the Attorney General of the State of Florida, who moved to have Plaintiff appointed as Receiver. The appointment (DE 22-3) was made pursuant to Florida Statutes § 501.207(3) and empowers Plaintiff to marshal, preserve, protect, maintain, manage, and safeguard the assets of the Receivership Entities with the intended end that the consumer victims of the Receivership Entities' schemes be made whole. To this end, Plaintiff has instituted the instant action seeking a judgment from the Court declaring that the agreement between the Receivership Entities was unlawful and recovering funds paid to Defendant under the contract. The facts, as alleged in the Amended Complaint and assumed to be true for the purpose of this motion, are as follows:

The Receivership Entities were engaged in a nationwide scheme whereby consumers were induced to believe that the Receivership Entities would reduce or eliminate the consumers' debts. Compl. ¶ 6. Relying on this false belief, the consumers paid millions of dollars to the Receivership Entities for debt relief services that were often never rendered and for debt relief advice that often only served to worsen the consumers' debt situations. Compl. ¶ 6. In fact, the Receivership Entities debt settlement program operated as an advance fee scheme, designed to extract up-front attorneys' fees and other charges from financially-strapped consumers, whether or not any useful services were performed. Compl. ¶ 9. Often, no useful services were performed and the consumers found themselves in greater financial difficulty with greater debt obligations than before they contracted with the Receivership Entities. Compl. ¶ 9.

Defendant played an integral role and actively participated in the Receivership Entities'

deceptive debt settlement scheme. Compl. ¶ 7.  Referring Agents, such as Defendant, acted on behalf of the Receivership Entities pursuant to written and oral contracts and agreements, as well as pursuant to courses of dealing established in connection with those contracts and agreements. Those contracts and agreements sometimes described the Referring Agent as providing "marketing" or "educational" services. Compl. ¶ 11.  The Receivership Entities paid the Referring Agents from the attorneys' fees and other fees paid by the consumer clients.  Compl. ¶ 12.  The Referring Agents marketed the debt settlement programs, often without any explicit reference to the Receivership Entities, and provided the information necessary for interested consumers to contact the Referring Agent. Compl. ¶ 13.  When contacted by the consumers in response to the Referring Agents' solicitations, the Referring Agents screened the consumers to ensure that they were appropriate candidates for the debt settlement program offered by the Receivership Entities. Compl. ¶ 14.  Consumers typically contacted the Referring Agents by telephone, at which time the Referring Agents would provide information to and obtain information from the consumer.  Compl. ¶ 15.  The consumer usually learned for the first time during this contact that he would be entering into an attorney-client relationship with one of the Receivership Entities. Compl. ¶ 15.

Typically, for the first six to eight months, all of the client's monthly payments were devoted solely to attorneys' fees for the Receivership Entities.  These payments, either directly or indirectly through an intermediary, were split with the Referring Agent.  Compl. ¶ 23.  The Referring Agents typically did not disclose this fact to the client. Compl. ¶ 23.  Because the Receivership Entities frequently failed to render any beneficial services, many clients dropped out of the program after a few months. ¶ 24.  Most of those clients were not provided a refund

and were substantially worse off than they had been before entering the program.  Compl. ¶ 24.

For very little investment of time, effort, and expense, the Referring Agents were able to reap

significant profits from identifying appropriate consumers and referring them to the Receivership

Entities.   Compl. ¶ 25.

Pursuant to written and oral contracts and agreements, as well as a course of dealing

established in connection with those contracts and agreements, Defendant acted as a Referring

Agent for the Receivership Entities. Compl. ¶ 29.  Defendant was party to a written contract

pursuant to which it agreed to identify consumers eligible for the Receivership Entities' debt

settlement program and to refer some or all of those consumers to the Receivership Entity known

as Campos Chartered Law Firm.  Compl. ¶ 30; Exh. 1 at Art. V,  ¶ 2.  The written agreement

contemplated that Defendant would act as a subagent or subcontractor for another entity ("Seton

Corp.") and Defendant was permitted to engage its own subagents or subcontractors to fulfill its

contractual obligations.  Compl. ¶ 31; Exh. 1 at Art. V,  ¶¶ 2-5, Art. VI,  ¶ 1.1.  Seton Corp. or

an affiliate (collectively referred to as "Seton Corp.") had contracted directly with the

Receivership Entities.  Compl. ¶ 32.   The Receivership Entity was stipulated to be a "third party

beneficiary" of the Defendant's contract with Seton Corp.  Compl. ¶ 32; Exh. 1 at Art. VI,  ¶ 1.7.

Defendant's services entailed direct communications with consumers for the purpose of

convincing them to purchase the legal services of the Receivership Entities.  Compl. ¶ 33.

Defendant falsely represented to the clients that the Receivership Entities would provide legal

services to the consumers that would relieve those consumers of their debt burdens by

negotiating down the consumers' outstanding debt obligations. Compl. ¶ 33.  Defendant knew or

should have known that this representation was false. Compl. ¶ 33.  Defendant instructed clients

to provide authorization for the Receivership Entities to debit the client's bank account on a

monthly basis by automatic bank draft.  Compl. ¶ 33.  Defendant misled clients by representing

that their monthly payments would be accumulated and placed into an escrow or trust account on

behalf of the client for payment to the client's creditors.  Compl. ¶ 33.  Defendant misled clients

by representing that the consumers' credit rating would not be adversely affected by the debt

settlement program. Compl. ¶ 33.  Defendant instructed clients to stop making payments to their

creditors, even if the clients had been making timely payments to creditors. Compl. ¶ 33.

Defendant received payment of fees, including portions of the attorneys' fees paid by the

clients, from the Receivership Entities either directly or through the intermediary of Seton.

Compl. ¶ 34.  Defendant was paid by the Receivership Entities in exchange for identifying and

referring clients to the Receivership Entities. Compl. ¶ 35.  Regardless of the stated terms of any

contract, Defendant was paid on the basis of the number of clients referred and the amount of

fees paid by the client.  Compl. ¶ 36.  Further, Defendant was also promised a bonus "based on

productivity, or any combination of the above factors."  Compl. ¶ 36; Exh. 1 at Art. VI,  ¶ 1.2.

Defendant was entitled to receive these fees "for each Client [successfully referred] for so long as

Client remains party to a Retainer Agreement with the Law Firm [Receivership Entity]."  Compl.

¶ 37; Exh. 1 at Art. VI,  ¶ 1.4 (emphasis added).  Defendant was paid at least $4,558,080 in fees

for successfully luring consumers into the Receivership Entities' deceptive debt settlement

scheme.  Compl. ¶ 37.  In approximately July 2008, the Receivership Entities ceased paying

portions of the fees to any advertiser, including Defendant.  Compl. ¶ 27.


**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

court must accept all factual allegations in a complaint as true and take them in the light most

favorable to the plaintiff.  See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (internal citation and quotation omitted).  "A complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food and Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  Id.

**Discussion**

Declaratory Judgment (Count I)

Count I of the First Amended Complaint seeks a declaration that Defendant's arrangements with the Receivership Entities violated Florida Statutes Section § 877.02 and, therefore, are void and unenforceable.  Am. Comp. ¶¶ 38-40.  The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  The phrase "case of actual controversy" in the Declaratory Judgment Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); see also Prasco, LLC v. Medicis Phar. Corp., 537 F.3d 1329, 1335 (Fed. Cir. 2008) ("The Declaratory Judgment Act's requirement of 'a case of actual controversy' simply affirms this Constitutional requirement, having long been interpreted as referring to any case and controversy that is justiciable under Article III.").

Article III of the United States Constitution restricts federal judicial power to the adjudication of cases or controversies. U.S. Const. art. III, § 2.  Hence, as long as a claim "meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action." MedImmune, 549 U.S. at 127.  In MedImmune, the Supreme Court reaffirmed the basic principle for determining whether a declaratory judgment claim satisfies the "case of actual controversy" requirement.  Courts must determine "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.'" 549 U.S. at 127 (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, (1941)) (emphasis added).  The MedImmune Court emphasized that the dispute must be " 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " Id. at 127 (quoting Aetna Life Ins. Co., v. Haworth, 300 U.S. 227, 240-41 (1937)).

Here, the Amended Complaint alleges that Defendant acted as a Referring Agent for the Receivership Entities, pursuant to written and oral contracts and agreements as well as a course of dealing established in connection with those contracts and agreements. Am. Comp. ¶¶ 29-34. Pursuant to a contract in which the Receivership Entities were the intended beneficiary, the Receivership Entities paid Defendant over $4.5 million for identifying and referring clients to them. Am. Comp. ¶¶ 32, 34-37.   As a result of the fraudulent debt settlement scheme of which Defendant's services allegedly played an integral part, the Receivership Entities are liable to the consumers referred by Defendant.  Defendant has refused to reimburse the Receivership Entities and contends that it can keep the money it was paid as having been "legitimately earned" through "a contract between SCK and a third party."  DE  at 2.  Accordingly, there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.


Deceptive and Unfair Trade Practices (Count II)

In Count II, the Plaintiff alleges that Defendant was an intergral part of and active participant in the deceptive and unfair trade practices that were the subject of the November 25,

2008 Consent Judgment in the Seventeenth Judicial Circuit in and for Broward County, Florida. That judgment found that the Receivership Entities engaged in unfair and deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.204(1), Fla. Stat. Am. Comp. ¶¶ 42-44.   Plaintiff also alleges that Defendant engaged in a systematic pattern of conduct designed and intended to induce concumers to purchase the services of the Receivership Entities via a series of misleading, false, deceptive or fraudulent representations, where Defendant knew or should have known that the "debt settlement program" was nothing more than a deceptive scheme.  Am. Comp. ¶¶ 45-46.

Defendant's deceptive and unfair conduct allegedly included the following:  Defendant falsely represented to the clients that the Receivership Entities would provide legal services to the consumers that would relieve those consumers of their debt burdens by negotiating down the consumers' outstanding debt obligations. Compl. ¶ 33.  Defendant knew or should have known that this representation was false. Compl. ¶ 33.  Defendant instructed clients to provide authorization for the Receivership Entities to debit the client's bank account on a monthly basis by automatic bank draft.  Compl. ¶ 33.  Defendant misled clients by representing that their monthly payments would be accumulated and placed into an escrow or trust account on behalf of the client for payment to the client's creditors.  Compl. ¶ 33.  Defendant misled clients by representing that the consumers' credit rating would not be adversely affected by the debt settlement program. Compl. ¶ 33.  Defendant instructed clients to stop making payments to their creditors, even if the clients had been making timely payments to creditors. Compl. ¶ 33.

Contrary to Defendant's position, the Receiver does have standing to bring a FDUPTA claim.  To the extent it is necessary that the Receivership Entities must have acted as a consumer, Plainitff has sufficiently alleged in the Amended Complaint that the Receivership Entities

purchased marketing services from Defendant.  Moreover, by the terms of the Order appointing

the Receiver and the plain language of FDUTPA, Defendant may not rely on the wrongful

conduct of the Receivership Entities as a shield against liability.  See Receivership Order at 6;

Fla. Stat. § 501.207(3) (authorizing appointment of a Receiver to "bring actions in the name of

and on behalf of the defendant enterprise, without regard to any wrongful acts that were

committed by the enterprise").

      Based on the allegations in the Amended Complaint, Plaintiff has sufficiently alleged

conduct on behalf of Defendant to support a claim under FDUTPA.

Unjust Enrichment (Count III).

      Count III of the Amended Complaint alleges that Defendant has been unjustly enriched in

light of the payments it received pursuant to the scheme described above. Am. Comp. ¶¶ 49-52.

The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit

on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the

conferred benefit; and (3) the circumstances are such that it would be inequitable for the

defendant to retain the benefit without paying the value thereof to the plaintiff. Peoples Nat'l

Bank of Commerce v. First Union Nat'l Bank of Fla., 667 So.2d 876, 879 (Fla. 3d DCA 1996)

(quoting Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994) (citations

omitted)).

      Defendant argues that the unjust enrichment claim fails for two reasons.  First, it argues

that there is no allegation that the Receivership Entities conferred a direct benefit on it.  It  argues

that, at most, the allegations show that the Receivership Entities conferred a direct benefit on

Seton. See American Safety Ins. Service, Inc. v. Griggs, 959 So.2d 322, 331 (Fla. 5th DCA

2007) ("The plaintiffs must show they directly conferred a benefit on the defendants.").  Plaintiff

has sufficiently alleged a payment arrangement between the Receivership Entities and the Referring Agents in the Amended Complaint. <u>See</u> Am. Comp. ¶¶ 26.  Whether the Defendant did or did not receive a direct benefit from the Receivership Entities is a question of fact that cannot be resolved at the motion to dismiss stage in this case.  <u>See</u> <u>Romano v. Motorola, Inc.</u>, 2007 WL 4199781 (S.D. Fla. 2007) (denying motion to dismiss unjust enrichment claim) ("Defendant is correct in stating that 'Florida law does not support a cause of action for unjust enrichment unless the plaintiff can allege that he conferred a direct benefit on the defendant.'  However, Defendant erroneously equates direct contact with direct benefit in arguing that "[b]ecause plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.") (internal citations omitted).

Second, Defendant argues that there is no allegation that it was paid the approximately $4.5 million in fees *unfairly*, since it is alleged that Defendant was paid for the marketing services it performed. Defendant argues this was a valuable service.  This argument is without merit.  The Amended Complaint alleges that "[f]or very little investment of time, effort, and expense, the Referring  Agents were able to reap significant profits from identifying appropriate consumers and referring them to the Receivership Entities."  Compl. ¶ 25.  Moreover, Defendant is alleged to have been involved in the wrongful conduct through which it received the $4.5 million benefit.

**Conclusion**

For the reasons stated herein, Defendant's Motion to Dismiss the Amended Complaint

(DE 20) is DENIED.  Plaintiff's Request for Oral Argument (DE 24) is DENIED.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 24th day of June, 2009.

                            _____

                            KENNETH A. MARRA

                            United States District Judge

copies to:
All counsel of record